Robert LUMBERT, Plaintiff-Appellant,

v.

ILLINOIS DEPARTMENT OF CORRECTIONS, et al., Defendants-Appellees.

No. 86–1192.

United States Court of Appeals, Seventh Circuit.

Submitted July 15, 1987.

Decided Aug. 27, 1987.

Robert Lumbert, Danville, Ill., for plaintiff-appellant.

Patricia Rosen, Illinois Atty. Gen., Chicago, Ill., for defendants-appellees.

Before POSNER and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

Lumbert, an inmate in an Illinois state prison, appeals from the dismissal of his civil rights suit against the Illinois prison system and two of its officials. The ground of dismissal was his failure to pay a $7.20 filing fee assessed by the district judge pursuant to the General Order Regarding Petitions for Leave to Proceed Without Prepayment of Fees and Costs, issued by the U.S. District Court for the Central District of Illinois on July 25, 1984. The General Order provides:

> An inmate who seeks leave to proceed without prepayment of fees and costs shall be required to make a partial payment of filing fees in an amount not to exceed fifty percent (50%) of the inmate's average monthly income for the six (6)

months immediately preceding the submission of the petition. In any event, the fee shall not exceed the full statutory fee required of all other civil plaintiffs.

The General Order also provides that an inmate be given an opportunity to show why he cannot make the partial payment required by the Order. We upheld the Central District's partial-payment plan in *Bryan v. Johnson*, 821 F.2d 455, 457–58 (7th Cir.1987), citing an earlier dictum by this court and holdings in several other circuits, see, e.g., *In re Williamson*, 786 F.2d 1336 (8th Cir.1986), but without discussing the arguments against it mounted by Lumbert in the present appeal.

 Lumbert does not argue that the district court misapplied the General Order; and he has either abandoned in this court, or forfeited by not raising in the district court, see *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir.1987), several other arguments. Only two arguments remain. The first is that requiring even partial payment by someone who cannot afford to pay the filing fee is an unconstitutional burden on the right of access to the courts. It is true, as he argues, that state and federal government, including the judicial branch, may not erect arbitrary or unduly onerous obstacles to suit. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). But it is not true that placing any cost on the filing of litigation violates the Constitution. Otherwise all filing fees would be unconstitutional, which of course they are not. This and other courts have even issued or upheld injunctions forbidding nuisance litigants to continue filing suits. See, e.g., *Lysiak v. Commissioner*, 816 F.2d 311 (7th Cir.1987) (per curiam); *Green v. Warden*, 699 F.2d 364, 369–70 (7th Cir.1983); *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir.1984); *In re Green*, 669 F.2d 779 (D.C.Cir.1981). The correct principle is that reasonable costs may be imposed on persons who want to sue.

 Litigation is not a free good, and its costs are not limited to those who initiate it. They are borne not only by the plaintiff but by the defendant, by the taxpayer, and by parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges than if the caseload were lighter. If the suit is frivolous the defendant may be able to recover his direct litigation outlays from the plaintiff by an order awarding attorney's fees, entered at the close of the case. But the order can at best cover only a portion of the total social costs of the litigation, and of course it is ineffectual if the plaintiff can't afford to pay the award. Moreover, even if a suit is not frivolous (and we have no idea whether Lumbert's is or is not—the suit was dismissed not because it was frivolous but because he refused to pay the $7.20 filing fee), it will impose costs on the defendant and the judicial system. We want the putative plaintiff to think about the case and not just file reflexively; having to make even a modest monetary outlay may help focus his thinking.

 And just because a plaintiff can't afford to pay the full filing fee, it doesn't follow that his lawsuit is incapable of imposing substantial costs on the defendant and on others. Indeed, the problem of litigation that generates social costs in excess of its social benefits is particularly acute with respect to litigation by indigents, since they cannot be deterred from suit by the prospect of having to pay their adversaries' legal expenses should the suit be adjudged frivolous. The problem is even more acute when the indigent plaintiff is a prison inmate, because the costs of a prisoner's time are very low. Lumbert for example has filed more than thirty lawsuits, all as an inmate, since 1980.

 Much can be done to control the problem of unwarranted prisoner litigation by careful screening of cases by the district court at the outset. The court did this, by requiring Lumbert to certify that his complaint contained only new claims, not claims rejected in his previous lawsuits. But the role of incentives should not be ignored. It is proper that prisoners be made to think twice—by monetary exactions well within their ability, limited as it is, to pay—about bringing lawsuits that have no significant prospect of obtaining

any worthwhile relief. A suit not worth $7.20 to an inmate who could pay this fee is unlikely to be worth the time of the courts. If the inmate thinks that a more worthwhile use of his funds would be to buy peanuts and candy (two of the items that, the record shows, Lumbert has purchased from the prison commissary) than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor.

■ This may or may not be Lumbert's situation. In his return to the district court's order to show cause why he should not be assessed a partial fee of $7.20 he argued that the fee had been miscalculated and that the court had exaggerated his assets. But he has decided not to pursue these arguments on appeal, so we must assume that he can afford the money and that his refusal to pay is a decision to use the money to buy other things—which may indeed be worth more to him than a lawsuit that may, for all we know, be groundless.

This is an important point, because the General Order is inapplicable to prisoners who cannot afford to pay the partial fee assessed against them. The case is thus unlike *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), where the indigent could not afford to pay the fee for obtaining a divorce. Lumbert can (we must assume) afford to pay $7.20; he just would rather use his money for other purposes.

■ Lumbert's second argument is a statutory one; it is that the General Order is inconsistent with the Supreme Court's holding in *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), that a litigant need not be totally destitute to qualify for indigent status under 28 U.S.C. § 1915(a). This statute provides:

> Any court of the United States may authorize the commencement, prosecution, or defense of any suit, action or proceeding, civil or criminal, on appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor....

The Court held that the statutory words "unable to pay such costs or give security therefor" were not to be read so literally that if the choice for the litigant was between paying the filing fee and eating, he could not be deemed indigent. "The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support." 335 U.S. at 339, 69 S.Ct. at 89. It was therefore enough to comply with the statutory requirement if the affidavit of indigence stated that the plaintiff could not pay or give security " 'and still be able to provide' himself and dependents 'with the necessities of life.' " *Id.* But Lumbert is not being asked to give up any necessities of life; they in any event are being bought for him by the State of Illinois. He is being asked to contribute a portion of his discretionary funds to defray a minute fraction of the total social costs of his suit.

The judgment dismissing Lumbert's suit because of his refusal to pay the filing fee assessed against him in accordance with the General Order is

AFFIRMED.